IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMETT BROWM, | ) |
| | ) |
| **Plaintiff** | ) |
| vs. | ) Civil No. 14-383 |
| | ) |
| ENVOY AIR INC., d/b/a AMERICAN EAGLE, | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

On April 1, 2014, acting *pro se,* Plaintiff Emmet Brown filed a Complaint against Defendant Envoy Air Inc. ("Envoy") alleging that Envoy violated his rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). By August 28, 2014, Plaintiff had retained counsel and was no longer acting *pro se*. Plaintiff's current counsel entered her appearance on October 14, 2014 and on October 27, 2014, she filed an Amended Complaint on Plaintiff's behalf in which it is alleged that Envoy violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963 when: (1) Envoy subjected Plaintiff, a Pentecostal Christian, to religious discrimination by refusing to accommodate his request that he not be scheduled to work on Sundays, nevertheless scheduling him to work on Sundays, and then terminating him; and (2) Envoy treated Plaintiff unfairly due to his race when, on two occasions, it reprimanded Plaintiff, who is African-American for not showing up for work, but did not reprimand the two white employees who failed to show up to cover his shift as they had promised, and by forcing Plaintiff to ask for breaks and lunches when white employees did not have to do so. Plaintiff also alleges a Pennsylvania state law claim for wrongful discharge based on Envoy discharging Plaintiff for exercising his religious beliefs.

On November 11, 2014, Defendant filed a Motion to Dismiss Plaintiff's Title VII and PHRA claims of race discrimination on the basis that Plaintiff failed to exhaust administrative remedies as to those claims prior to bringing this law suit. Envoy also has moved to dismiss Plaintiff's wrongful discharge claim on the basis that "because Title VII and the PHRA both provide a statutory remedy for Brown's allegedly wrongful dismissal . . . no such claim exits under Pennsylvania state law." Motion to Dismiss, p. 1.

**A. Plaintiff's Race Discrimination Claim.**

In response to Defendant's Motion to Dismiss his race discrimination claims under both Title VII and the PHRA, Plaintiff contends that that they "should not be dismissed because failing to check a box on his Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") should not preclude him from being able to pursue a racial discrimination lawsuit. The EEOC was not created for the purpose of limiting employment discrimination lawsuits nor was Title VII enacted for such a purpose." Opposition Brief, pp. 1-2. Plaintiff also argues "Plaintiff did not assert racial discrimination in his Charge because the primary discrimination he was subjected to was on the basis of religion. Plaintiff was not aware he could select and/or assert more than one type of discrimination on his Charge so he picked religious discrimination. Plaintiff failure to check a box on his Charge is a technicality and should not bar him from asserting race discrimination later on." Id. at p. 3.

Before a plaintiff can bring a Title VII action, he must exhaust his administrative remedies, typically by filing a charge with the EEOC and receiving from the EEOC a notice of the right to sue. 42 U.S.C. § 2000e–5e(1); see also Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). Failure to exhaust administrative remedies, while not a jurisdictional defect, is a ground to dismiss a case for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6). Devine v. St. Luke's Hosp., 406 Fed. Appx. 654 (3d Cir. 2011) (citing Anjelino v. New York Times Co., 200 F.3d 73, 87–8 (3d Cir. 2000).

In Hicks v. ABT Associates, Inc., 572 F.2d 960 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit addressed the applicable standard for determining the scope of a civil action asserting claims arising under Title VII. The Hicks court explained: "[o]nce a charge has been filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'." Id. at 966 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir.1976)).

Thus, the query before this Court is whether the scope of the EEOC investigation which could reasonably be expected to grow out of the Plaintiff's charge of discrimination would have included the EEOC investigating Plaintiff being discriminated against on the basis of his race. To decide this question, we turn to Plaintiff's EEOC Intake Questionnaire and Charge, documents which were submitted by Plaintiff and Envoy in support of their positions on this Motion to Dismiss. Notably, we are permitted to consider the contents of both Plaintiff's Intake Questionnaire and EEOC Charge in deciding Defendant's Motion to Dismiss without converting it to a Motion for Summary Judgment. See Twillie v. Erie School Dist., 2013 WL 4666072, n. 3 (explaining "[t]he Court may properly consider documents from administrative proceedings before the EEOC in considering a motion to dismiss federal claims of employment discrimination. See Buck v. Hampton Tp. School Dist., 452 F.3d 256, 260–61 (3d Cir. 2006) (reviewing two EEOC intake questionnaires and the plaintiff's formal EEOC charge in evaluating the defendant's motion to dismiss); see also Ruddy v. U.S. Postal Serv., 455 Fed. Appx. 279, 283 & n. 5 (3d Cir. 2011) (noting that the district court, in considering the

defendant's motion to dismiss for, inter alia, failure to exhaust administrative remedies, "properly relied on [the plaintiff's] EEOC file, which [the plaintiff] referenced in his complaint and which is integral to his claim")).

Turning to the documents, Plaintiff first submitted an Intake Questionnaire to the EEOC on May 14, 2013. Relevant to this case, the Questionnaire asks (and explains) the following question:

> **What is the reason (basis) for your claim of employment discrimination?"**
>
> *FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion, and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

In response to this question, Plaintiff only "x"ed the "Religion" box; he did not insert an "x" in the "Race" box. Further, in describing on the Questionnaire what he believed was discriminatory on the part of Envoy, Plaintiff explained "on all Sundays through 3/24/13 I didn't come to work on 2/17 and 2/24/13 I switched with other employees but in both cases they did not show, so I was held responsible" and "[d]ischarged by Adrienne Ferris/Supervisor Airport services." Plaintiff then answered the question "Why do you believe these actions were discriminatory" as follows: "I informed Adrienne Ferris/Supervisor at the time of hiring that I was not able to work Sundays. I was told that it would not be a problem. From 10/09 until 2/15/13 I was not scheduled any Sundays. Only because of my beliefs and no other reason I was singled out and discharged." He then answered the question "What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?" as follows: "I was told by Kevin Carr/General Manager that (he) wouldn't make religious exceptions and that I was just have to

find someone to switch with me or work the Sundays myself." Plaintiff did not provide any information in response to the question: "Describe who was in the same or similar situation as you and how were they treated."

Plaintiff subsequently submitted to the EEOC on July 31, 013, a Charge of Discrimination ("Charge"). The Pennsylvania Human Relations Commission is named as the applicable state agency. On the Charge, where Plaintiff was asked to check the appropriate box(es) for what the alleged discrimination was based on, he placed an "x" next to the box "Religion," and did not place an "x" next to the box "Race." In describing the particulars of the alleged discrimination on the "Charge," he listed three (3) reasons:

1. I was hired as a Station Agent by the Respondent on or about October 9, 2012. At the time of my hire, I informed the Respondent that I was not able to work Sundays due to my religion. As a result, I was not scheduled to work on Sundays. However, beginning on or about February 17, 2013, I was scheduled to work on Sundays. At that time, the Respondent failed or refused to provide me with a religious accommodation. Meanwhile, I switched my Sundays on February 17 and February 24, 2013. But the employees failed to show for work; and I was held responsible. Nonetheless, I continued not working Sundays. Consequently, on or about March 25, 2013, I was discharged from my position.

2. Kevin Garr (General Manager) told me he would not make religious exceptions; and therefore, I needed to find somebody to switch with me or I had to work Sundays. On or about March 25, 2013, Adrienne Ferris (Supervisor Airport Services) handed me a letter informing me that I was terminated effective March 25, 2013 because "your performance during your probationary period has not met American Eagle Airlines minimum standards."

3. I believe that the Respondent discriminated against me because of my religion (Pentecostal) in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII) in that the Respondent employees are not represented by a union and there was no collective bargaining agreement dictating the schedule. Therefore, the Respondent could have provided me with a religious accommodation without creating an undue hardship."

5

Based upon the contents of these documents, we find that the scope of the EEOC investigation which could reasonably be expected to grow out of the Plaintiff's Charge of discrimination would not have included the EEOC investigating Plaintiff being discriminated against on the basis of his race. In particular, nothing in Charge or Intake Questionnaire can be inferred to suggest that Plaintiff believed that he was alleging a charge of discrimination based upon race. To the contrary, Plaintiff only checked the Religion box in his Charge, and did not check the Race box, and while the Intake Questionnaire explicitly states that if one opines that he is being discriminated against for more than one reason, he can check more than one box, Plaintiff only checked the box that indicated that he was being discriminated against based on his religion and did not "x" the race box. More significantly, Plaintiff's written explanation of the facts underlying his claim of discrimination in both the Charge and the Intake Questionnaire only assert he was being discriminated against on the basis of his religion, and never even mentioned his race. Indeed, as emphasized by the Defendant, in the Intake Questionnaire, Plaintiff goes so far as to state "[o]nly because of my beliefs and no other reason I was singled out and discharged." As such, the Court concludes that the Plaintiff failed to exhaust his administrative remedies with respect to his Title VII and PHRA claims to the extent he is basing them on race discrimination and we will dismiss said claims. Furthermore, we will dismiss said claims with prejudice because Plaintiff had to have filed his administrative claim/charge of race discrimination within 300 days of the last allegedly discriminatory action, here his termination on March 25, 2013, and this he did not, and cannot, do in a timely fashion at this late date.

### B. Plaintiff's Wrongful Discharge Claim.

We turn next to Defendant's Motion to Dismiss Plaintiff's state law wrongful discharge claim. In response to Defendant's Motion to Dismiss his wrongful discharge claim, Plaintiff

raises a public policy argument, contending that it "should not be dismissed because if Plaintiff's claims are dismissed under Title VII and PHRA then no statutory remedies will be available and he will have to rely on remedies available through a wrongful discharge claim. Plaintiff's Opposition Brief, p. 2. See also Id. at p. 5-6 ("Plaintiff filed a wrongful discharge claim as a protective measure in case the statutory remedies available under Title VII and the PHRA failed. If Plaintiff's claims for discrimination under Title VII and the PHRA were to be dismissed then there would be no statutory remedy available. Therefore Plaintiff would have to resort to available remedies under a wrongful discharge lawsuit.") (citations omitted).

In Cruz v. Pennridge Regional Police Dept., 2003 WL 21742015 (E.D. Pa.), the district court explained:

> "Under Pennsylvania law, an at-will employee may have an action for wrongful discharge if he [or she] was terminated in violation of a significant, clearly mandated public policy." "This is an exception to the general rule that employers may terminate at-will employees at any time for any reason, and is very narrowly construed. Moreover, "[t]he protection of employees from [ ] discrimination is without doubt a clearly mandated public policy."
>
> However, a cause of action for wrongful discharge may be maintained only in the absence of a statutory remedy for an aggrieved employee. Specifically, "claims of . . . discrimination in the workplace cannot be heard as claims of wrongful discharge through the public policy exception where there are statutory remedies available which Plaintiffs may pursue, namely under the Pennsylvania Human Relations Act, Section 1981 and Title VII of the Civil Rights Acts." Therefore, because there are statutory remedies available to [Plaintiff] for her claims of discrimination and retaliation (of which she has taken advantage), her claim for wrongful termination must be dismissed.

Id. at *8. Thus, contrary to Plaintiff's contention, the question of whether Plaintiff will or will not have his Title VII or PHRA claims dismissed is not the dispositive factor for determining whether or not his state law claim for wrongful discharge should be dismissed. Rather the question is whether there are statutory remedies available to Plaintiff for his allegations of

7

discrimination. The answer to the query is yes, under Title VII and the PHRA. Therefore, because there are statutory remedies available to Plaintiff for his claims of discrimination, his claim for wrongful termination must be dismissed with prejudice.

**C. Conclusion.**

Defendant's Motion to Dismiss Plaintiff's Title VII and PHRA claims to the extent they are based upon allegations of race discrimination and Plaintiff's state law wrongful discharge claim is granted with prejudice. An appropriate Order follows herewith:

## ORDER

AND NOW, this 25th day of November, 2014, it is hereby ORDERED, ADJUDGED, and DECEED that Defendant's Motion to Dismiss with prejudice Plaintiff's Title VII and PHRA race discrimination claims and wrongful dismissal claim is GRANTED. Said claims are dismissed from Plaintiff's Amended Complaint WITH PREJUDICE.

*/s/ Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge